UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

CASE NO.: 9:24-cv-80777-AMC

CHARLES ROTSZTAJN,

   Plaintiff,

v.

CBW BANK and PRIME RECOVERY LLC,

   Defendants.
_____/

**DEFENDANT CBW BANK'S MOTION TO COMPEL ARBITRATION
AND INCORPORATED MEMORANDUM OF LAW**

**COMES NOW** Defendant CBW Bank ("CBW"), by and through its undersigned counsel, hereby moves this Court pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, for entry of an order compelling arbitration of the claims asserted by Plaintiff Charles Rotsztajn ("Plaintiff") and staying this litigation as to CBW. In support of this Motion, CBW states as follows:

**INTRODUCTION**

The U.S. Supreme Court has repeatedly confirmed that courts must enforce arbitration agreements. *See Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Under the Federal Arbitration Act ("FAA"), an arbitration agreement must be enforced where: (1) the parties entered a written agreement to arbitrate claims, (2) the transaction has a nexus to interstate commerce, and (3) the arbitration clause encompasses the claims. 9 U.S.C. § 2. This inquiry must be undertaken against the background of a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l*

1

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (stating the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution.") (citations omitted). "[C]onsistent with th[e] text [of the FAA], courts must '***rigorously enforce***' arbitration agreements according to their terms…." *Am. Express*, 570 U.S. at 233 (emphasis added) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

Given the strong federal policy favoring arbitration, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000); *see also Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991) (finding that "the burden is on [the party opposing arbitration] to show that Congress intended to preclude a waiver of a judicial forum"). Thus, OneMain's motion to compel arbitration "must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone*, 460 U.S. at 24.

Plaintiff applied for and was approved for a line of credit with CBW, serviced by Credit Fresh. This credit account is governed by a written Line of Credit Terms and Conditions agreement (the "Agreement"), which includes an arbitration agreement requiring individual arbitration of any disputes relating to the account. Plaintiff opened and utilized the account subject to the inclusion of this arbitration language. Therefore, the arbitration clause is fully enforceable under the FAA and Florida law.

Further, Plaintiff's claims fall squarely within the scope of the arbitration clause in the Agreement because they "arise under and relate to" certain alleged debt collection communications related to enforcement and collection of the subject account debt. Accordingly, Plaintiff's claims must be pursued in arbitration, and CBW therefore moves for an order compelling the parties to

arbitrate their claims and a stay of the current action before this Court pending an adjudication of this matter in arbitration.

### I. FACTUAL BACKGROUND

#### A. The Credit Account.

On or about October 13, 2020, Plaintiff applied for and was approved for certain terms for a line of credit with CBW. *See* Declaration of Warren Brasch ("CBW Decl."), at ¶ 6, a copy of which is attached hereto as **Exhibit "A"** Declaration of Matthew Wiens ("Credit Fresh Decl."), at ¶ 6, a copy of which is attached hereto as **Exhibit "B"**. The Account was originated with CBW as the originator and Lender and Credit Fresh as the Servicer, which provided support account servicing and customer service for the Account. In its capacity as Servicer, Credit Fresh processed the credit application submitted by Plaintiff for approval by CBW. (*See* CBW Decl., at ¶ 7; Credit Fresh Decl., at ¶ 7.)

Plaintiff made his last successful payment on the account in the amount of $271.13 on or about July 15, 2021. (*See* Credit Fresh Decl., at ¶ 11 & Ex. 2 thereto.) The account was ultimately charged-off following an extended period of delinquency with an outstanding balance of $4,158.33. (*See id.*) The account was subsequently sold to a third-party debt buyer on or about November 17, 2021. (*See* Credit Fresh Decl., at ¶ 12 & Ex. 3 thereto.)

#### B. The Credit Agreement and Arbitration Agreement.

As is standard practice, upon completing the application process Plaintiff was provided a copy of the applicable Agreement, which Plaintiff electronically executed in compliance with the Electronic Signatures in Global and National Commerce Act by typing the last four digits of his Social Security number thereby consenting to the terms stated therein, including the arbitration provision.

> **This Agreement, including the Arbitration Agreement and Jury Trial Waiver, attached hereto as Attachment A, are received, executed, and dated on 10-13-2020.**
>
> **I AGREE (type last 4 digits of SSN):** [redacted]

(*See* CBW Decl., at ¶¶ 8–9; Credit Fresh Decl., at ¶ 8.)

The arbitration provision specifies that the arbitration provision covers "You, Us, and Others," noting that "[t]his Clause governs the parties, their heirs, successors, assigns, and third parties related to any Dispute." (*See* CBW Decl., at ¶ 11.) As defined in the Agreement, the term "us" refers to "CBW Bank … and any affiliate, contractor, subcontractor or related third party thereof and any subsequent holder of this Agreement." (*See id*.)

The Agreement expressly informed Plaintiff of the parties' agreement to arbitrate, including a bold type heading. (*See id*., Ex. 1 thereto.) The arbitration provision specifically provided for individual arbitration of all disputes arising from or relating to the Account as follows:

| **Which Disputes are covered?** | All Disputes. | In this Clause, the word "**Disputes**" has the broadest possible meaning. This Clause governs all "**Disputes**" involving the parties that arise out of or directly or indirectly relate to the Line of Credit Documents. This includes, but is not limited to:<br>1. all issues concerning the transaction in connection with which this Arbitration Agreement and Jury Trial Waiver ("**Arbitration Agreement**") is attached;<br>2. initial claims, counterclaims, cross-claims, and third-party claims, whether arising in law or equity, and whether based upon federal, state or local law; contract; tort; fraud or other intentional tort; the law of unconscionability or interest rate permissibility; constitution; common law; or statute, except as set forth below;<br>3. any issue as to whether any such claims, controversies, or disputes are subject to arbitration; and<br>4. any claims, controversies, or disputes that would otherwise be subject to class actions.<br>This means that all claims, controversies or disputes that are the subject of class actions will also be subject to binding arbitration under the FAA and this Arbitration Agreement. |
|---|---|---|

(*See* CBW Decl., at ¶ 10.)

The arbitration provision also included a procedure whereby Plaintiff could elect to opt out of arbitration provision or pursue alternative dispute resolution option. To opt out of the arbitration provision, Plaintiff was directed to simply by sending a written notice to reject the requirement as follows:

| If you don't want to arbitrate, can you still get a transaction? | Yes. You can get our services and decide not to arbitrate. | Consider these choices:<br>1. **Informal Dispute Resolution.** Contact us and attempt to settle any Disputes.<br>2. **Small-claims Court.** Seek to solve Disputes in small-claims court, within state law limits.<br>3. **Opt-Out of Arbitration.** Sign and then timely opt-out. |
|---|---|---|
| Can you opt-out of the Clause? | Yes. Within 60 days. | Write to us within 60 calendar days of signing your agreement to opt-out of the Clause for that agreement. List your name, address, account number and date. List that you "opt out". If you opt out, it will only apply to that agreement. |

(*See id.*, Ex. 1 thereto.). Here, Plaintiff did not exercise his right to write to Credit Fresh or CBW to reject the arbitration provision (*see* Credit Fresh Decl., at ¶¶ 9–10); rather, Plaintiff executed the Agreement subject to the applicable arbitration provision.

C.      **The Current Litigation.**

On or about June 25, 2024, Plaintiff filed this lawsuit against CBW and co-defendant Prime Recovery LLC therein asserting, *inter alia*, that the parties violated the Florida Consumer Collections Practices Act ("FCCPA") and Fair Debt Collections Practices Act ("FDCPA") related to certain alleged debt collection communications sent after the parties had knowledge that Plaintiff was represented by counsel. (*See* D.E. 1.) Based upon these allegations, Plaintiff contends he is entitled to recover actual, compensatory, and punitive damages against CBW. (*See id.*)

II.     **ARGUMENT**

A.      **Standard to Compel Arbitration.**

In making a determination as to whether to compel arbitration of a matter filed in litigation, courts apply the summary judgment standard under Fed. R. Civ. P. 56. *See Johnson v. Keybank*

*Nat'l Assoc.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (describing an order compelling arbitration as "summary-judgment-like"; it is "'in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate'"). Thus, a court should grant a motion to compel arbitration where there is no genuine dispute that: (1) there is a valid agreement to arbitrate, and (2) the dispute in question falls within the scope of that agreement. *See Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) ("If, under a summary judgment-like standard, the district court concludes that there is no genuine dispute as to any material fact concerning the formation of such an agreement, it may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement.") (internal citations omitted).

      **B.**      **The FAA Governs Enforcement of the Arbitration Agreement.**

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."); *see also AT&T Mobility LLC*, 563 U.S. 333 ("Section 2 [of the FAA] makes arbitration agreements 'valid, irrevocable, and enforceable' as written . . . ."). The Supreme Court has repeatedly recognized the scope of the FAA is extremely broad and that it applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g.*, *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967).

The FAA promotes a "liberal federal policy favoring arbitration agreements," and for this reason "questions of arbitrability must be addressed with a healthy regard for the federal policy

favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *AT&T Mobility LLC*, 563 U.S. at 339. The Supreme Court has recognized that the "'principal 'purpose' of the Act is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC,* 563 U.S. at 344; *see also Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) (citations omitted). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985).

By consenting to bilateral arbitration, the "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen*, 559 U.S. at 685 (citations omitted). Thus, "parties may agree to limit the issues subject to arbitration [citation], to arbitrate according to specific rules [citation], and to limit with whom a party will arbitrate its disputes [citation]." *AT&T Mobility LLC*, 563 U.S. at 334 (citations omitted). Ultimately, "[i]t falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." *Stolt-Nielsen*, 559 U.S. at 684.

Here, Plaintiff expressly agreed that the FAA governed the arbitration provision, and that it would apply when resolving claims through arbitration. Specifically, the Agreement stated as follows:

> **28. Governing Law**
> The laws of the State of Kansas govern this Agreement. However, any dispute arising out of this Agreement and any renewal thereof will be subject to the Arbitration Agreement and Jury Trial Waiver, incorporated by reference to this Agreement, which is governed by the Federal Arbitration Act.

| What law applies? | The Federal Arbitration Act ("FAA"). | This transaction involves interstate commerce, so the FAA governs. If a court finds the FAA doesn't apply, and the finding can't be appealed, then your state's law governs. The Arbiter must apply substantive law consistent with the FAA. The Arbiter must follow statutes of limitation and privilege claims. |
|---|---|---|

(*See* CBW Decl. & Credit Fresh Decl., Ex. 1 thereto.) *See also, e.g.*, *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 954 (N.D. Ohio 2009) (noting that "the Contract itself provides that '[t]he Federal Arbitration Act governs this Arbitration Clause'" and concluding therefore that the "Arbitration Clause is governed by the Federal Arbitration Act … and not by any state arbitration law"); *Staples v. Money Tree, Inc.*, 936 F. Supp. 856, 858; *Thomas O'Connor & Co. v. Ins. Co. of North Am.*, 697 F. Supp. 563, 566 (D. Mass. 1988).

Under the FAA, courts throughout the country, including the United States Supreme Court and the Eleventh Circuit, routinely enforce arbitration agreements in consumer contracts like the one at issue here. *See*, *e.g.*, *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 132 S. Ct. 665 (2012) (credit card agreement); *AT&T Mobility LLC*, 563 U.S. 333 (cell phone services contract); *Buckeye Check Cashing, Inc.*, 546 U.S. 440 (consumer loan agreement); *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000) (finance contract for purchase of mobile home); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (home improvement loan); *Allied-Bruce Terminix Companies, Inc.*, 513 U.S. 265; *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205 (11th Cir. 2011) (cell phone services contract); *Scott v. EFN Invs., LLC*, 312 F. App'x 254 (11th Cir. 2009) (consumer sales contract for the purchase of a vehicle).

C. **The Prerequisites for Enforcement of the Arbitration Agreement are Satisfied.**

The FAA provides that any arbitration agreement within its scope "shall be valid, irrevocable, and enforceable," 9 U.S.C. § 2, and permits a party to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement. *Id., § 4.*

An arbitration agreement governed by the FAA is presumed to be valid and enforceable. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626–27 (1985). An arbitration agreement is specifically enforceable under the FAA if the following requirements are met: (1) the existence of a written agreement to arbitrate claims, (2) a nexus to interstate commerce, and (3) coverage of the claims by the arbitration clause. *See* 9 U.S.C. § 2. Each of these elements is clearly satisfied in this case.

      i.    The Parties' Arbitration Agreement is in Writing.

The operative Credit Agreement contains a written arbitration agreement. (*See* Decl., Ex. A.) Thus, the first prerequisite to enforcement of the arbitration agreement is undoubtedly satisfied here. *See* 9 U.S.C. § 2; *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005) (discussing the "in writing" requirement of the FAA).

      ii.    The Parties' Transaction Involved and/or Affected Interstate Commerce.

The transaction affects interstate commerce, thus satisfying the second prerequisite to enforcement of the subject arbitration provision. Indeed, in executing the Agreement, Plaintiff explicitly agreed as follows: "This transaction involves interstate commerce, so the FAA governs." (*See* Decl., Ex. A.)

Further, it is beyond dispute that the delivery, transfer, or movement of goods, services, or other articles of commerce "across state lines has long been recognized as a form of 'commerce.'" *Camps Newfound/Owatonna, Inc. v. Town of Harrison,* 520 U.S. 564, 573 (1997); *see also*, *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 36 (1980). Here, Plaintiff resides in the state of Florida residing in Palm Beach County, Florida (*see* D.E. 1, at ¶ 3), and CBW is a banking institution based in Weir, Kansas. (*See* CBW Decl., at ¶¶ 2–3.)

The FAA provides, in pertinent part, that:

> A written provision in maritime transaction or a contract <u>evidencing a transaction involving commerce</u> to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

U.S.C. § 2 (emphasis added). The term "involving commerce" in the FAA has been interpreted as the functional equivalent of the more familiar term "affecting commerce" and "encompasses a wider range of transactions than those actually 'in commerce' — that is, 'within the flow of interstate commerce.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied Bruce Terminix Co.*, 513 U.S. 265, 273 (1995)).

It is also evident that the credit transaction involved and/or affected interstate commerce because it was extensively regulated by the federal government by virtue of its plenary powers under the Commerce Clause. For example, credit agreements such as the one at issue must comply with several federal laws and regulations, including the federal Truth-in-Lending Act.[1] Since "[t]he financing transaction, itself, must comply with federal laws and regulations including the Truth-in-Lending Act . . . a nexus between the arbitration agreement in this case and interstate commerce [exists]." *First Family Fin. Servs., Inc. v. Fairley*, 173 F. Supp. 2d 565, 573 (S.D. Miss. 2001); *see also U.S. v. Klopf*, 423 F.3d 1228 (11th Cir. 2005) ("Concerning the requirement that the access-device fraud affect interstate or foreign commerce, credit cards generally are issued to applicants by out-of-state financial institutions, and credit-card account numbers travel across state lines,

---

[1] *See Mourning v. Family Publ'ns Serv.*, 411 U.S. 356, 377 (1973) (the power to enact the Truth-in-Lending Act was granted to Congress under the Commerce Clause); *FTC v. P. Lorillard Co.*, 283 F. 999, 1002-03 (S.D.N.Y. 1922), *aff'd*, 264 U.S. 298 (1924) (the FTC's power to enact rules and regulations derives from Congress's power under the Commerce Clause).

both electronically and by mail. By making purchases and withdrawals with the fraudulently obtained credit cards, Kloph engaged in interstate financial transactions."); *Wilson v. Par Builders II, Inc.*, 879 F. Supp. 1187, 1189–90 (M.D. Fla. 1995) (noting that a transaction governed by the Truth-in-Lending Act affected interstate commerce).

Because of the undisputed federal regulation of credit origination and use, it necessarily follows that the origination and use of the Account "affects" interstate commerce so as to bring into play the FAA. Given this standard, the parties' transactions unquestionably involved and/or affected interstate commerce. Therefore, the second prerequisite to enforcement of the arbitration agreement is clearly met.

   iii. <u>Plaintiff's Claims Fall Within the Scope of Arbitration, and Any Dispute as to the Arbitration Agreement's Scope Must Be Determined by the Arbitrator.</u>

The arbitration agreement broadly covers any "all 'Disputes' involving the parties that arise out of or directly or indirectly relate to the Line of Credit Documents…" including "all issues concerning the transaction in connection with which this Arbitration Agreement and Jury Trial." (*See* CBW Decl., at ¶ 10 & Ex. A thereto.) Here, Plaintiff's claims arise directly out of the Agreement, as he alleges that CBW communicated with Plaintiff to collect the debt in violation of Florida or federal law. (*See* D.E. 1, ¶¶ 13–22 & 34–47.)

It is now well-settled law nationwide, as well as in this circuit, that statutory consumer claims in general are subject to arbitration. *See, e.g.*, *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220 (1987) (RICO claim held subject to arbitration); *Bowen v. First Family Fin. Servs.*, 233 F.3d 1331 (11th Cir. 2000) (TILA claim subject to arbitration); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721-24 (9th Cir. 1999) (Sherman Act and Lanham Act claims subject to arbitration); *Sagal v. First USA Bank, N.A.*, 69 F. Supp. 2d 627 (D. Del. 1999) (consumer fraud act claims subject to arbitration), *aff'd*, 254 F.3d 1078 (3d Cir. 2001).

In fact, numerous courts in the Eleventh Circuit have compelled arbitration of similar statutory consumer protection claims. *See, e.g.*, *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1145 (11th Cir. 2015) (claims under the Georgia Payday Lending Act, O.C.G.A. § 16-17-2, subject to arbitration); *Wickersham v. Lynch Motor Co. of Auburn, Inc.*, No. 3:11CV280-SRW, 2012 U.S. Dist. LEXIS 30203, at *11-12 (M.D. Ala. Mar. 6, 2012) (compelling arbitration claims under TILA, the FCRA, and ECOA, in an action related to the plaintiff's purchase of a vehicle, because "[a]ll of the claims plaintiff asserts in her complaint arise out of the August 2010 vehicle sales transaction . . . , the parties' attempt to obtain financing . . . for plaintiff's purchase of the vehicle, and defendant's conduct in repossessing the vehicle . . . [which] fall within the scope of [plaintiff's] agreement with [defendant] to arbitrate disputes arising out of or relating to their relationship."); *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1224–25 (M.D. Fla. 2013) (compelling arbitration of claims under the TCPA and the Florida Consumer Collections Practices Act, Fla. Stat. § 559.55 *et seq.*, where "[t]he alleged violations [were] tied directly to charges that are set forth in the . . . Agreement."); *Inetianvor v. CashCall Inc.*, 923 F.Supp.2d 1358 (S.D. Fla. 2013) (compelling arbitration of FCRA and defamation claims as the arbitration agreement covered "all disputes between the borrower and the holder of the Note").

Moreover, although CBW is confident Plaintiff's claims fall within the broad scope of the arbitration agreement, to the extent there are any questions as to the scope of its coverage, they must be decided by the arbitrator. The FAA establishes that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24–25. The party resisting arbitration bears the burden of showing the arbitration agreement is invalid or does not encompass the claims at issue. *See Green Tree Financial Corp.-Alabama*, 531 U.S. 79, 92 (2000). "[W]here the contract contains an

arbitration clause, there is a presumption of arbitrability." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F. 3d 1277, 1284 (9th Cir. 2009).

      E.      **Plaintiff's Claims Against CBW Must Be Stayed.**

This Court should not only compel the arbitration of Plaintiff's claims against CBW, but it should also stay Plaintiff's claims against CBW in favor of binding arbitration. Section 3 of the FAA addresses the procedure for handling cases where issues are referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

As discussed above, Plaintiff's claims are covered by the operative Arbitration Agreement in the Credit Agreement. Accordingly, because the entire controversy between Plaintiff and CBW will be resolved in arbitration, this Court should compel Plaintiff's claims to arbitration and stay the claims asserted against CBW. Pursuant to both the FAA and the U.S. Supreme Court, courts are required to stay proceedings when all underlying claims have been referred to arbitration. *See Smith v. Spizzirri*, 144 S. Ct. 1173, 1176 (2024).

### III.    CONCLUSION

Plaintiff entered into a valid and enforceable agreement to arbitrate the claims asserted in this litigation. His claims against CBW related to alleged debt collection communications related to the Account fall squarely within the scope of the operative arbitration agreement; thus, the FAA requires arbitration of those claims. CBW therefore respectfully requests this Court enter an order

compelling arbitration of Plaintiff's claims and staying this action as to CBW pending the outcome of any binding arbitration.

### CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(3)

[x] that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so;

[ ] that counsel for the movant has made reasonable efforts to confer with all parties or non-parties who may be affected by the relief sought in the motion, including numerous emails with Plaintiff on [DATE(S)] requesting to discuss this action, but has been unable to do so.

DATED: October 11, 2024.

Respectfully submitted,

*/s/ Sara L. Solano*
Sara L. Solano, Esq. (FL Bar No. 117966)
BURR & FORMAN LLP
200 East Broward Boulevard, Suite 1020
Ft. Lauderdale, FL 33301
Telephone: (954) 414-6200
Facsimile: (954) 414-6201
Email: flservice@burr.com
Email: ssolano@burr.com
Email: rzamora@burr.com

*Counsel for Defendant*
CBW BANK

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 11, 2024, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which will serve a copy of the aforesaid via Notice of Electronic Filing to all parties of record.

*/s/ Sara L. Solano*
Sara L. Solano, Esq. (FL Bar No. 117966)
BURR & FORMAN LLP