# EXHIBIT "A"

Docusign Envelope ID: 41BC69DF-53A0-4412-936B-4F0281E9133C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

CASE NO.: 9:24-cv-80777-AMC

CHARLES ROTSZTAJN,

    Plaintiff,

v.

CBW BANK and PRIME RECOVERY LLC,

    Defendants.

_____/

## DECLARATION OF WARREN BRASCH

### A. Background Information

1.     My name is Warren Brasch. I am over the age of eighteen (18) and am competent to make this Declaration. I make this Declaration based on personal knowledge and my professional responsibilities and duties.

2.     I am a Counsel for CBW Bank ("CBW" or "Bank") a federally insured Kansas state-chartered bank permitted to engage in the business of establishing accounts and making loans throughout the United States. Because of my work in this position, I have personal knowledge regarding the facts set forth herein.

3.     CBW has its registered office at 109 East Main Street, Weir, Kansas 66781. CBW partners with CreditFresh, which operates as a servicer for the Bank.

4.     Based on my position, I am familiar with CBW's recordkeeping practices and am authorized to execute this Declaration.

5.     Information in this Declaration is taken from CBW's business records. I have personal knowledge of CBW's procedures for creating these records. They are: (a) made at or near

Docusign Envelope ID: 41BC69BF-53A0-4412-936B-4E0281E9133C

the time of the occurrence of the matter and recorded by persons with personal knowledge of the information in the business records; (b) kept in the course of regularly conducted business activities; and (c) it is CBW's regular practice to make such records and to rely upon those records in day-to-day operations.

**B.  <u>The Account and Credit Agreement</u>**

6.      According to CBW's records, on or about October 13, 2020, Charles Rotsztajn ("Plaintiff") opened a line of credit assigned account number ████430 (the "Account") in response to an application for credit that Plaintiff submitted to Credit Fresh via the site creditfresh.com on the same date.

7.      The Account was originated with CBW as the Lender and CreditFresh as the Servicer. In its capacity as Servicer, CreditFresh provided account servicing and customer service support for the Account, including processing the credit application submitted by Plaintiff for approval by CBW.

8.      CBW and its servicer's have a contractual relationship with their customers pursuant to a written Line of Credit Terms and Conditions agreement (the "Agreement"), which sets forth the terms and conditions that govern accounts and the relationship between the parties. As is standard practice, upon completing the application process Plaintiff was provided a copy of the applicable Agreement, which Plaintiff electronically executed in compliance with the Electronic Signatures in Global and National Commerce Act by typing the last four digits of his Social Security number and thereby consenting to the terms stated therein, including the arbitration provision. A true and correct copy of the executed Agreement is attached hereto as **Exhibit "1"**.

9.      Specifically, the Agreement includes Plaintiff's agreement to be bound as Plaintiff entered the last four digits of his Social Security number under the language stating, in bolded text,

as follows: "**This Agreement, including the Arbitration Agreement and Jury Trial Waiver, attached hereto as Attachment A, are received, executed, and dated on 10-13-2020.**" (*See* Ex. A, at p. 9) (emphasis included).

    10.    The Agreement's arbitration provision states, in pertinent part, as follows:

In this Clause, the word "**Disputes**" has the broadest possible meaning. This Clause governs all "**Disputes**" involving the parties that arise out of or directly or indirectly relate to the Line of Credit Documents. This includes, but is not limited to:

> 1. all issues concerning the transaction in connection with which this Arbitration Agreement and Jury Trial Waiver ("**Arbitration Agreement**") is attached;
> 2. initial claims, counterclaims, cross-claims, and third- party claims, whether arising in law or equity, and whether based upon federal, state or local law; contract; tort; fraud or other intentional tort; the law of unconscionability or interest rate permissibility; constitution; common law; or statute, except as set forth below;
> 3. any issue as to whether any such claims, controversies, or disputes are subject to arbitration; and
> 4. any claims, controversies, or disputes that would otherwise be subject to class actions.

This means that all claims, controversies or disputes that are the subject of class actions will also be subject to binding arbitration under the FAA and this Arbitration Agreement.

(*See* Ex. 1, at p. 12) (emphasis included).

    11.    The arbitration provision specifies that the arbitration provision covers "You, Us, and Others," noting that "[t]his Clause governs the parties, their heirs, successors, assigns, and third parties related to any Dispute." (*See* Ex. 1, at p. 12.) As defined in the Agreement, the term "us" refers to "CBW Bank … and any affiliate, contractor, subcontractor or related third party thereof and any subsequent holder of this Agreement." (*See* Ex. 1, at p. 1.)

    12.    The arbitration provision in the Agreement also contained an opt-out provision as follows:.

Write to us within 60 calendar days of signing your agreement to opt-out of the

Docusign Envelope ID: 41BC69DE-53A0-4412-936B-4E0281E9133C

Clause for that agreement. List your name, address, account number and date. List that you "opt out." If you opt out, it will only apply to that agreement.

(*See* Ex. 1, at p. 16). Upon CBW's knowledge and belief,  Plaintiff did not opt out of the arbitration provision in the Agreement.

13.     The records referenced above and attached hereto are true and correct copies of records kept or obtained by CBW in the ordinary course of business. The records were made by or from information transmitted by an employee or representative with knowledge of the events, recorded therein. The records were made at or near the time of the events recorded therein or reasonably soon thereafter. Except for the redactions for privacy concerns, the records attached are exact duplicates of the originals.

<div align="center">(<em>Signature on the Following Page</em>)</div>

55437854 v1

I hereby declare under penalty of perjury and under the laws of the United States of America that the foregoing is true and correct.

Executed on October 11, 2024.

Name: Warren Brasch

Title:  Counsel

# EXHIBIT "1"



# LINE OF CREDIT TERMS AND CONDITIONS

| OPENING ACCOUNT CREDIT LIMIT: $3,400.00 | ACCOUNT #: ███████<br>AGREEMENT DATE: 10-13-2020 |
| --- | --- |

| LENDER: | CUSTOMER: |
| --- | --- |
| **Name:** CBW Bank<br>**Address:** 109 E. Main St. Weir, KS 66781<br>**Telephone Number:** 620-396-8221 | **Name:** CHARLES ROTSZTAJN<br>**Address:** 22365 DORADO DR, BOCA RATON, FL 33433<br>**Email Address:** ████████████<br>**Cell Phone:** ██████3544<br>**Home Phone:** █████3544<br>**Social Security Number (SSN):** ████████<br>**Date of Birth:** ██████ |

| SERVICER*: | |
| --- | --- |
| **Name:** CreditFresh<br>**Mailing Address:** 200 Continental Drive, Suite 401, Newark, DE 19713<br>**Telephone:** 1-800-766-2007<br>**Email:** customerservice@creditfresh.com<br>**Website:** www.creditfresh.com | |

| SOURCE OF INCOME**: | BANK INFORMATION: |
| --- | --- |
| **Employer/Benefit Type:** ████████<br>████████<br>**Work Phone:** ██████0233 | **Type of Account:** Checking<br>**Account Number:** ████████<br>**Routing Number:** ████████ |

*While CBW Bank is the originator of your Line of Credit, CBW Bank utilizes a third party to support account servicing and customer service. Any customer inquiries will be directed to the servicer identified above.

**Alimony, child support, or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.

**For Wisconsin Residents Only – NOTICE TO MARRIED APPLICANTS:** No provision of a marital property agreement, a unilateral statement under §766.59 Wis. Stats., or a court order under §766.70 Wis. Stats. adversely affects the interest of the creditor, unless the creditor, prior to the time credit is granted, is furnished a copy of the agreement, statement or decree or has actual knowledge of the adverse provision when the obligation to the creditor is incurred.

In this Line of Credit Agreement (hereinafter, the "**Agreement**"), the words "**you**", "**your**", "**yours**" and "**Customer**" mean the person that is identified under the heading "**Customer**" above. The words "**we**", "**us**", "**our**", and "**Lender**" mean CBW Bank, a Kansas State Chartered Bank and any affiliate, contractor, subcontractor or related third party thereof and any subsequent holder of this Agreement.

**By agreeing below and submitting the Agreement, you certify that all information provided above is true, complete, and correct. You acknowledge receiving a completed copy of the Agreement, agree that you have read and understood all of the terms on the Agreement, and agree that the Agreement and any related transaction involves interstate commerce. Consistent with our Privacy Policy, you authorize us to obtain and to share with our affiliates information about you, including consumer reports, for the duration of this and any subsequent loan products unless you exercise any of your opt-out rights.**

**You authorize us to contact you and/or your personal contacts provided regarding your Line of Credit as permitted by applicable law.**

**Please be advised that information provided by you herein is for the purposes of applying for credit. By agreeing below, you consent that we may obtain and use information about you from third parties, including consumer reports, and to review your account for as long as you owe any amount to us.**

*The Agreement will be deemed incomplete and will not be processed by us unless*

*agreed by you below.*



# TRUTH IN LENDING STATEMENT

| **Interest Rate and Interest Charges:** | | |
|---|---|---|
| **Billing Cycle Charge** | You will incur a Billing Cycle Charge each billing cycle based on the average daily principal balance. | |

| Average Daily Principal Balance | Non-Monthly Billing Cycle Charge | Monthly Billing Cycle Charge |
|---|---|---|
| $0.01 – $9.99 | $5.00 | $10.00 |
| $10.00 – $249.99 | $15.00 | $30.00 |
| $250.00 – $499.99 | $30.00 | $60.00 |
| $500.00 – $749.99 | $40.00 | $80.00 |
| $750.00 – $999.99 | $55.00 | $110.00 |
| $1,000.00 – $1,249.99 | $70.00 | $140.00 |
| $1,250.00 – $1,499.99 | $85.00 | $170.00 |
| $1,500.00 – $1,749.99 | $95.00 | $190.00 |
| $1,750.00 – $1,999.99 | $105.00 | $210.00 |
| $2,000.00 – $2,249.99 | $115.00 | $230.00 |
| $2,250.00 – $2,499.99 | $120.00 | $240.00 |
| $2,500.00 – $2,749.99 | $135.00 | $270.00 |
| $2,750.00 – $2,999.99 | $145.00 | $290.00 |
| $3,000.00 – $3,249.99 | $160.00 | $320.00 |
| $3,250.00 – $3,500.00 | $175.00 | $350.00 |

**How We Will Calculate Your Balance:** Your Outstanding Balance is the sum of the unpaid portion of your Line of Credit and the Billing Cycle Charge calculated at the time of your Periodic Statement or payoff. The Billing Cycle Charge is determined by applying the charge in the columns above in accordance with your Average Daily Principal Balance for the Billing Cycle.

**"Billing Cycle Charge"** is determined by applying the charge in the columns above in accordance with your Average Daily Principal Balance for the Billing Cycle.

**"Average Daily Principal Balance"** is calculated by: (i) adding the Daily Balance of your Account for each day in your Billing Cycle; and (ii) dividing such sum by the total number of days in your Billing Cycle.

**"Billing Cycle"** means the interval between the days or dates of regular Periodic Statements. Each Billing Cycle is either (a) approximately fourteen (14) days long, if you are paid on a non-monthly frequency; or (b) approximately thirty (30) days long if you are paid on a monthly frequency. Please be advised, the first Billing Cycle may differ depending on the Effective Date of your

Agreement.

"**Grace Period**": There is no Grace Period in which a Billing Cycle Charge will not accrue. If you pay the Outstanding Balance of your Line of Credit prior to the end of the first Billing Cycle, the Billing Cycle Charge will be calculated in accordance with the Average Daily Principal Balance method explained above.

**Avoidance of Charges and Billing Rights:** **There is no way to avoid the Billing Cycle Charge if you obtain a Line of Credit except in accordance with your rights to dispute transactions and how to exercise those rights as provided in this Agreement, and with Termination/Rescission. See "Termination/Rescission" (Part II.17) and "Your Billing Rights" (Part IV) below for more details.**

## PART I – TERMS AND CONDITIONS OF YOUR LINE OF CREDIT

### 1. Important Notice about Procedures for Opening a New Account:

To help the government prevent the funding of terrorism and money laundering activities, we are required to obtain, verify, and record information that identifies each person who opens an Account. **What this means for you:** when you open an Account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying information.

**NOTICE:** WE ARE REQUIRED BY LAW TO ADOPT PROCEDURES TO REQUEST AND RETAIN IN OUR RECORDS INFORMATION NECESSARY TO VERIFY YOUR IDENTITY.

### 2. Establishing Your Line of Credit:

Your Account will be established when: (i) you agree to the terms and conditions of this Agreement by signing below; (ii) we have verified all the information you provided to us; and (iii) your request has been approved and we have sent you an approval email indicating that your Account has been established. The Effective Date of your Agreement may be impacted by when your Agreement is established. The approval email you receive will indicate the Effective Date of your Agreement.

### 3. Your Credit Limit:

Your Credit Limit (set out on the first page of the Line of Credit Terms and Conditions) is the maximum amount that you can borrow under your Line of Credit. Your "**Available Credit**" is the amount of credit available to you at a given point in time, and will be shown on your Periodic Statements. Any Advances you take pursuant to this Agreement will be deducted from your Available Credit. CBW Bank reserves the right to reassess your credit limit periodically, including by reevaluating your income and reviewing the use of your Account and payment history, which may result in an increase or a decrease to your credit limit, subject to applicable law.

### 4. How this Line of Credit Works:

Your Line of Credit is a convenient way for you to obtain funds. You will only use your Line of Credit for personal, family or household purposes. You may take out Advances up to your Credit Limit. You will be charged the Billing Cycle Charge in accordance with the Truth in Lending Statement above. Your Available Credit will replenish as you pay down your Outstanding Balance. You are responsible for keeping track of your Account balance, including all transactions on your Account. No Advances are permitted if your Account is Delinquent or in Default (See "**Delinquency**" section below).

You agree to make the Minimum Payment shown on each Periodic Statement on or before the Payment Due Date. The Minimum Payment will comprise of a Billing Cycle Charge and a payment towards your Outstanding Principal Balance as determined under provisions (i) and (ii) below. You may pay the unpaid balance of your Account at any time without cost or penalty. Your Minimum Payment will depend on your income frequency.

**(i) Non-Monthly Line of Credit:** If you receive income on a non-monthly basis, please note the applicable Billing Cycle Charge amounts in the Truth in Lending Statement provided above and the frequency in which you will receive Periodic Statements pursuant to Section 10 below. Your Mandatory Principal Contribution for a Non-Monthly Line of Credit will be calculated as 3% of the Outstanding Principal Balance at the end of the Billing Cycle or $15.00, whichever is greater. If the Outstanding Principal Balance is less than $15.00, the entire balance will be due.

**(ii) Monthly Line of Credit:** If you receive income on a monthly basis, please note the applicable Billing Cycle Charge amounts in the Truth in Lending Statement provided above and the frequency in which you will receive Periodic Statements pursuant to Section 10 below. Your Mandatory Principal Contribution for a Monthly Line of Credit will be calculated as 6% of the Outstanding Principal Balance at the end of the Billing Cycle or $30.00, whichever is greater. If the Outstanding Principal Balance is less than $30.00, the entire balance will be due.

In accordance with Kansas law, all payments are credited to your Account effective the day they

are received by us. Increases in your Available Credit may be delayed up to five (5) Business Days after your receipt of any payment. If you pay more than the Minimum Payment in one Billing Cycle, you will still be obligated to pay the full Minimum Payment in any subsequent Billing Cycles.

**5. Accessing Your Account and Requesting Funds:**

You may access your Account and/or request a draw by logging into your Account at secure.creditfresh.com/login or by calling us at 1-800-766-2007. Advances will usually be disbursed to your bank Account the Business Day after which they are requested. For information on the cut-off times, visit: https://www.creditfresh.com/resources/faqs/. The date and time the funds are made available to you by your bank is subject to your bank's policies. Any same day cancelation requests must be received prior to these cut-off times. Advance requests may not exceed your Available Credit.

You may request Advances when you establish your Account, or at a later date, as long as you have Available Credit. When you request an Advance, the proceeds will be distributed to you via an Automated Clearing House ("ACH") credit to your Bank Account associated with your Account and included on the first page of this Agreement. Please check with your bank for any specific policies that may affect the availability of your funds and any fees that you may be charged in connection with an Advance. For processing times, please visit: https://www.creditfresh.com/resources/faqs/.

You should be aware that for any disbursement, unavoidable delays as a result of bank holidays, the processing schedule of your individual bank, the untimely receipt of pay stubs, if such pay stubs are required, inability to verify information that you provide or other information related to your creditworthiness, inadvertent processing errors, "acts of God", and/or "acts of terror" may delay the disbursement of your Line of Credit proceeds.

**6. ACH Credit Authorization:**

You authorize us, any of our affiliates, agents and/or successors and assigns to initiate an ACH credit to your Bank Account for any and all Advances.

**7. Prenotification:**

You authorize us to initiate a prenotification entry to your Bank Account to verify the status of your Bank Account prior to initiation of the first debit entry we submit. This will not result in any funds being debited or credited to or from your Bank Account.

**8. Promise to Repay:**

You promise to pay the total amount of all outstanding Advances, and accrued Billing Cycle Charges required by this Agreement.

**9. Billing Cycle:**

To manage your Account, we divide time into periods called "**Billing Cycles.**" The length of your Billing Cycle depends on the frequency of your income. If your income frequency is non-monthly, your Billing Cycles will be approximately fourteen (14) days in length. If your income frequency is monthly, your Billing Cycles will be approximately thirty (30) days in length. Please be advised, the first Billing Cycle may differ depending on when your request is approved.

**10. Periodic Statements:**

For each Billing Cycle where (i) you have a balance due; (ii) we have received a payment; and/or (iii) we are otherwise required by law to provide you with a Periodic Statement, we will provide you an electronic Periodic Statement. You will receive notification via an email to the email address provided to us that your Periodic Statement is available through your online Account. Your Periodic Statement will contain your (as applicable) (A) Advances; (B) Billing Cycle Charges; (C) Mandatory Principal Contribution; (D) payments made; (E) other credits to your Account; (F) Minimum Payment; (G) past due amounts; (H) previous balance; and (I) New Balance. The Periodic Statement sent immediately after your most recent Billing Cycle is your "**Current Statement.**" If your income frequency is non-monthly, your Current Statement will be generated and sent to you at least fourteen (14) days prior to the applicable Payment Due Date. If your income frequency is monthly, your Current Statement will be generated and sent to you approximately thirty (30) days prior to the applicable Payment Due Date.

**11. Payments:**

You may make payments to us in any of the following methods:

**(i) Automated Clearing House (ACH):** If you choose to sign the Voluntary ACH Authorization below, we will debit the Minimum Payment from your Bank Account on each Payment Due Date. Additional provisions related to such ACH Authorization (including how to terminate ACH Authorization) are set forth in the Voluntary ACH Authorization terms below.

**(ii) Other:** If you do not sign the Voluntary ACH Authorization, you may elect to pay your Minimum Payments through another method of payment acceptable to us, including by debit card. To pay

via another method, please call 1-800-766-2007. When you call Customer Service at this number, we will ask you to inform us of your proposed alternate payment method to determine if such alternate method is acceptable to us.

### 12. Application of Payments:

All payments received on your Account will be applied as follows (as applicable): (A) to your Minimum Payment obligations; then (B) to any Delinquent amounts; then (C) to your Outstanding Principal Balance.

## PART II – GENERAL TERMS AND CONDITIONS

### 13. Delinquency:

Your Account will be considered "**Delinquent**" if you fail to make a payment on or before a Payment Due Date as set out in your Periodic Statement. Your Account will remain Delinquent until all unpaid payments are paid in full, or your Account is declared to be in "**Default**". You will not be permitted to request additional Advances if your Account is Delinquent.

### 14. Right to Cure:

If your Account is Delinquent, and you have the right to cure such delinquency, we will send you a written notice of your right to cure (the "**RTC Notice**") in accordance with applicable law. If you pay the amount outstanding by the date specified in the RTC Notice ("**Cure**"), this Agreement will continue in full force and effect as if no Delinquency occurred. If you do not Cure the Delinquency as set out in the RTC Notice, we may declare you in "**Default**" on your Account.

### 15. Default:

Your Account may be declared to be in "**Default**" if (a) your Account is Delinquent and you fail to Cure such Delinquency as set out above, (b) we believe that the prospect of payment or performance is significantly impaired, (c) you make any statement or representation about yourself, your employment or your financial condition that is false, or (d) you fail to keep any other promise under this Agreement.

### 16. Consequences of Default:

If you are Delinquent and Default occurs, if permitted by applicable law, we may then close your Account and declare all amounts immediately due and payable. If Default occurs and we exercise our option to close your Account, you must immediately pay us (i) the total Outstanding Balance on your Account and (ii) any and all collection costs we may charge you as permitted by applicable law. Any balance due to us as of your Default date shall bear the Billing Cycle Charge as calculated above.

### 17. Termination/Rescission:

This Agreement may be terminated (i) by us, upon adverse re-evaluation of your creditworthiness; (ii) by us, if you are in Default or otherwise breach a material term of this Agreement; or (iii) at any time at our option, in accordance with applicable law. You may rescind/cancel this Agreement in accordance with our rescission/cancelation policy, which can be found at: https://www.creditfresh.com/resources/faqs/.

### 18. No Waiver:

We may waive or delay exercising any of our rights without losing the ability to exercise those rights in the future.

### 19. Entire Agreement:

This Agreement and any documents incorporated by reference represent the entire agreement between the parties relating to the subject matter hereof. This Agreement alone fully and completely expresses the agreement of the parties relating to the subject matter hereof. There are no other courses of dealing, understanding, agreements, representations or warranties, written or oral, except as set forth herein. This Agreement may not be amended or modified, except by a written agreement signed by all parties hereto.

### 20. Account Information:

You authorize us to furnish information about your Account to credit reporting agencies and anyone else who may lawfully receive such information. You certify that all the information you have supplied is true, correct and accurate and that you will provide true and accurate information in connection with any future credit requests. PLEASE REFER TO OUR PRIVACY POLICY FOR MORE INFORMATION ON WHAT WE DO WITH YOUR INFORMATION.

### 21. Reporting to Credit Bureaus:

You authorize us to report information concerning your Account and/or your transactions with

credit bureaus. Account statuses, including delinquencies and defaults, may be reflected in your credit report.

**22. <u>Change in Terms</u>**

We may change the terms of this Agreement by adding, deleting or modifying any provision at any time in accordance with applicable law. Unless otherwise permitted by applicable law, you will be notified of any such change at least forty-five (45) days prior to the effective date of such change. If you have been notified of such change, and you intend to reject such change you must notify us in writing no later than ten (10) days before the effective date of such change.

**23. <u>Assignment:</u>**

This Agreement may not be assigned by you. We may assign or transfer this Agreement and our related rights and obligations without written notice to you. Your consent is not required if we make such an assignment or transfer.

**24. <u>Security Interest:</u>**

To the extent that you have provided a Voluntary ACH Authorization in connection with this Agreement, we are advising you that such authorization may be deemed a security interest for this Line of Credit.

**25. <u>Severability:</u>**

In case any provision of this Agreement is held invalid by a court of competent jurisdiction, it shall be enforced as if such provision was never included and the rest of this Agreement shall remain in full force and effect.

**26. <u>Changes in Personal Information:</u>**

You must notify us of any change in your name, address, email address, employment, financial situation or credit standing, and you must provide us with any and all additional financial information that we request. To prevent identity theft, you may be required to verify any change in your information.

**27. <u>General</u>**

Any words importing the singular number only shall include the plural and vice versa. All other capitalized terms used in this Agreement shall have the meaning specifically prescribed herein.

**28. <u>Governing Law</u>**

The laws of the State of Kansas govern this Agreement. However, any dispute arising out of this Agreement and any renewal thereof will be subject to the Arbitration Agreement and Jury Trial Waiver, incorporated by reference to this Agreement, which is governed by the Federal Arbitration Act.


**PART III – DEFINITIONS**

"**ACH**" has the meaning set out in Section 11 of this Agreement.

"**Account**" means the Line of Credit evidenced by this Agreement between us and you from which you may access borrowed funds (each, an Advance) up to your Credit Limit in accordance with this Agreement for personal, family or household purposes.

"**Advance**" means any draw on the Line of Credit from the Available Credit at any given time.

"**Business Day**" means Monday through Friday not including weekends or bank holidays.

"**Credit Limit**" means the maximum amount you can borrow under this Line of Credit. Your Credit Limit is set out on page one of the Line of Credit Terms & Conditions.

"**Cure**" has the meaning set out in Section 14 of this Agreement.

"**Current Statement**" has the meaning set out in Section 10 of this Agreement.

"**Daily Balance**" is the daily opening balance of your Account, plus any new Advances disbursed to your Account on such day, and less any principal payments to your Account on such day.

"**Delinquent**" has the meaning set out in Section 13 of this Agreement.

"**Default**" has the meaning set out in Section 15 of this Agreement.

"**Minimum Payment**" means the minimum payment you are required to pay each Billing Cycle.

"**New Balance**" means the new balance as set out on your Periodic Statement calculated as follows: (a) your previous balance; plus (b) any Advances during your Billing Cycle; plus (c) any charges incurred during your Billing Cycle; minus (d) any payments and credits to your Account during your Billing Cycle.

"**Outstanding Balance**" means the total amount owed on your Account on a given day, or the sum of the (i) Daily Principal Balance; and (ii) the Billing Cycle Charge as applied.

"**Outstanding Principal Balance**" is the amount of principal outstanding at the end of a particular Billing Cycle.

"**Payment Due Date**" means the date on which a Minimum Payment is due, as reflected on your Periodic Statement.

"**Periodic Statement**" means the statement issued by us for each Billing Cycle.

"**RTC Notice**" has the meaning set out in Section 14 of this Agreement.

## PART IV – YOUR BILLING RIGHTS

<div style="border:1px solid black">

### KEEP THIS NOTICE FOR FUTURE USE

This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

</div>

**What To Do If You Find A Mistake On Your Periodic Statement:**

If you think there is an error on your Periodic Statement, write to us at (i) 200 Continental Drive, Suite 401, Newark, DE 19713 or via email at (ii) customerservice@creditfresh.com.

In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of problem: If you think there is an error on your Periodic Statement, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the suspected error appeared on your Periodic Statement.
- At least three (3) Business Days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing or electronically. You may call us, but if you do, we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter:**

When we receive your letter, we must do two things:

- Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
- Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the Periodic Statement is correct.

While we investigate whether or not there has been an error:

1. We cannot try to collect the amount in question or report you to a credit bureau as delinquent on that amount.
2. The charge in question may remain on your Periodic Statement, and we may continue to include that amount in calculation of your Minimum Payment and applicable Billing Cycle Charge.
3. While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
4. We can apply any unpaid amount against your Line of Credit.

After we finish our investigation, one of two things will happen:

1. *If we made a mistake:* You will not have to pay the amount in question and the difference in Billing Cycle Charges applied to your Account while the amount in question was used in calculation will be refunded or deducted from.
2. *If we do not believe there was a mistake:* You will have to pay the amount in question, along with all applicable Billing Cycle Charge. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent to a credit bureau if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within ten (10) Business Days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent to a credit bureau without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter is settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your Periodic Statement is correct.

**By typing the last 4 digits of your SSN in the box beside "I AGREE" and clicking on "CONTINUE" below, you are electronically signing the Line of Credit Agreement and you:**

1. acknowledge, represent and warrant that:

   a. you have received, read, retained a copy of, understood, accept and agree to all of the terms and conditions of this Agreement, and the Arbitration Agreement and Jury Trial Waiver attached hereto as Attachment A (including the waivers of any rights to a jury trial and any rights to participate in class proceedings);

   b. this Agreement contains all of the terms of the agreement between you and us and no representations or promises other than those contained in the Agreement have been made;

   c. the Agreement was filled in before you signed it;

   d. you are not a debtor under any proceeding in bankruptcy, and have no intention to file a petition for relief under the United States Bankruptcy Code;

   e. if you provide us with a voluntary ACH debit authorization the account on which any ACH debit or similar payment device that you provide to us is a legitimate, open, and active account to which you are an authorized signer; and,

2. authorize us to verify the information given in connection with this Agreement, and you give us consent to obtain information about you from a consumer reporting agency or other sources.

**YOU ACKNOWLEDGE THAT THIS AGREEMENT WILL NOT BECOME EFFECTIVE UNTIL IT IS ACCEPTED BY CBW Bank, a Kansas State Chartered Bank and any affiliate, contractor, subcontractor or related third party thereof. Acceptance will be confirmed by email to the email address that you have provided after completion of our review of information that you have provided and additional verification steps. You acknowledge that acceptance will not be provided until we ensure all the information provided to us is true and correct and meets our qualifications. We may conduct additional underwriting on you and/or complete additional verification steps to ensure any such information is true and correct and that you meet our qualifications. If, during any additional underwriting and/or additional verification steps, we, in our sole discretion, determine that the information you have provided to us is not true or does not meet our qualifications, then we have no obligation to accept this Agreement or advance any funds. You also agree that we may withhold funding any Advance until we ensure all of the information you provided to us is true and we decide whether you meet our requirements.**

**This Agreement, including the Arbitration Agreement and Jury Trial Waiver, attached hereto as Attachment A, are received, executed, and dated on 10-13-2020.**

**I AGREE (type last 4 digits of SSN):** ███ |_____|



# VOLUNTARY ACH AUTHORIZATION

**READ VERY CAREFULLY BEFORE SIGNING.** Any terms referenced in this ACH Authorization ("**Authorization**") shall have the meanings assigned in the Agreement.

---

**YOU ARE NOT REQUIRED TO PROVIDE THIS AUTHORIZATION TO OBTAIN A LINE OF CREDIT.** YOU ACKNOWLEDGE THAT THE LENDER DID NOT CONDITION THE EXTENSION OF CREDIT ON THE PROVISION OF THIS AUTHORIZATION.

---

This Authorization allows debits to your Bank Account in accordance with the Agreement. If this Authorization is not completed, it is your obligation to make your payment(s) on or before the applicable Payment Due Date. You should allow sufficient time (at least five (5) calendar days) for the processing of payments. You may arrange payment(s) by an alternate method by calling 1-800-766-2007 and speaking with one of our Customer Service representatives.

You acknowledge the Bank Account below is active and legitimate.

| CHARLES ROTSZTAJN's BANK ACCOUNT INFORMATION: |
|---|
| **Bank Name:** █████████ |
| **Transit ABA Number:** ███████ |
| **Account Number:** ████████ |

You hereby voluntarily authorize us, any of our affiliates, agents, successors and/or assigns to initiate ACH debit entries to your Bank Account in accordance with the Agreement. This includes, but is not limited to ACH debits:

   a. for each Minimum Payment as well as for any payment due on a Payment Due Date that has been affected by a partial prepayment;
   b. for any accrued charges as described in the Agreement;
   c. in the event you terminate the Agreement in accordance with the terms of the Agreement, for the outstanding principal amount of the Line of Credit; and/or
   d. for any other amounts you specifically authorize.

You understand that if we assign your Agreement to any third party, this Authorization will also be assigned, and such holder will be entitled to initiate debit entries in accordance with this Authorization.

**Timing and amount of preauthorized transfers.** Each ACH debit entry will post to your Bank Account in the amounts agreed upon pursuant to the terms of your Agreement.

**Notice of preauthorized transfers in varying amounts.** For all electronic fund transfers from your Bank Account that vary in amount outside the Specified Range of Amounts described below, you have the right to receive notice at least ten (10) calendar days in advance. The Specified Range of Amounts shall be either of (i) the Minimum Payment on each applicable Payment Due Date; or (ii) the outstanding balance owing under the Agreement, as applicable.

**Dishonored preauthorized transfers. If any ACH debit entry is dishonored, you authorize us to reinitiate an ACH debit entry up to two (2) additional times. Your bank may impose a fee if your Account becomes overdrawn or an attempted payment is dishonored due to insufficient funds. You will not hold us responsible for any fees resulting from an ACH debit entry initiated in accordance with this Authorization.**

**Right to revoke this Authorization or stop payments and procedure for doing so. This Authorization is to remain in full force and effect until we have received notification from you of its termination. You can revoke this Authorization or stop one or more preauthorized payments at any time by calling us at 1-800-766-2007 or emailing us at customerservice@creditfresh.com. It may take up to three (3) Business Days before your request is processed. As such, a stop payment request must be made at least three (3) Business Days before the payment is scheduled to be made. In no event shall any revocation affect prior payments made to us pursuant to this Authorization, constitute a Default under the Agreement or adversely affect our decision to extend credit to you in the future.**

**Liability for failure to stop payment of preauthorized transfer. If you order us to stop one of these payments three (3) Business Days or more before the transfer is scheduled and we do not do so, we will be liable for your losses or damages.**

BY TYPING THE LAST 4 DIGITS OF YOUR SSN IN THE BOX BESIDE "I AGREE" BELOW, YOU ARE CONFIRMING THAT YOU VOLUNTARILY AGREE TO COMPLY WITH AND BE BOUND BY THIS AUTHORIZATION AND YOU AGREE AND UNDERSTAND THAT YOU ARE VOLUNTARILY AUTHORIZING THE LENDER, AND ANY OF THE LENDERS' AFFILIATES, SUCCESSORS, AGENTS AND ASSIGNS TO EFFECT DEBIT ENTRIES TO YOUR BANK ACCOUNT.

This ACH AUTHORIZATION IS RECEIVED AND EXECUTED ON 10/13/2020 at 13:52:52 EDT.

**I AGREE (type last 4 digits of SSN):**



# Attachment "A" - ARBITRATION AGREEMENT AND JURY TRIAL WAIVER

## Background and Scope

| | | |
|---|---|---|
| **What is arbitration?** | An alternative to court. | In arbitration, a third party ("**Arbiter**") solves Disputes in a hearing ("**hearing**"). You, related third parties, and we, waive the right to go to court. Such "**parties**" waive jury trials. |
| **Is it different from court and jury trials?** | Yes. | The hearing is private and less formal than court. Arbiters may limit pre-hearing fact finding, called "**discovery**". The decision is final, and court review of arbitration decisions is limited. |
| **Who does the Clause cover?** | You, Us, and Others. | This Clause governs the parties, their heirs, successors, assigns, and third parties related to any Dispute. |
| **Which Disputes are covered?** | All Disputes. | In this Clause, the word "**Disputes**" has the broadest possible meaning. This Clause governs all "**Disputes**" involving the parties that arise out of or directly or indirectly relate to the Line of Credit Documents. This includes, but is not limited to:<br><br>1. all issues concerning the transaction in connection with which this Arbitration Agreement and Jury Trial Waiver ("**Arbitration Agreement**") is attached;<br>2. initial claims, counterclaims, cross-claims, and third-party claims, whether arising in law or equity, and whether based upon federal, state or local law; contract; tort; fraud or other intentional tort; the law of unconscionability or interest rate permissibility; constitution; common law; or statute, except as set forth below;<br>3. any issue as to whether any such claims, controversies, or disputes are subject to arbitration; and<br>4. any claims, controversies, or disputes that would otherwise be subject to class actions.<br><br>This means that all claims, controversies or disputes that are the subject of class actions will also be subject to binding arbitration under the FAA and this Arbitration Agreement. |
| **Is there a public injunctive relief exception?** | Yes. | You or we may, but are not required to, submit claims for public injunctive relief under any state or federal statutes that specifically provide for such relief to arbitration under this Arbitration Agreement. In the event that either you or we elect to pursue such a claim through court proceedings, all other claims between us shall remain subject to the provisions of this Arbitration Agreement. |
| **Are you waiving class action rights?** | Yes. | You waive your rights to be in a class action, as a representative and a member. Only individual arbitration, or small-claims courts, will solve Disputes. You waive your right to have representative claims. **Unless reversed on appeal, if a court invalidates this waiver, the Clause will be void.** |

| What law applies? | The Federal Arbitration Act ("FAA"). | This transaction involves interstate commerce, so the FAA governs. If a court finds the FAA doesn't apply, and the finding can't be appealed, then your state's law governs. The Arbiter must apply substantive law consistent with the FAA. The Arbiter must follow statutes of limitation and privilege claims. |
|---|---|---|
| Can the parties try to solve Disputes first? | Yes. | We can try to solve Disputes if you call us. If this doesn't solve the Dispute, email us notice, within 100 days of the Dispute date. In your notice, tell us the details and how you want to solve it. We will try to solve the Dispute. If we make a written offer ("**Settlement Offer**"), you can reject it and arbitrate. If we don't solve the Dispute, either party may start arbitration. To start arbitration, contact an Arbiter or arbitration group listed below. No party will disclose settlement proposals to the Arbiter during arbitration. |
| How should you contact us? | By email or phone. | Send an email to cfnotices@creditfresh.com or call 1-800-766-2007. |
| Can small-claims court solve <u>some</u> Disputes? | Yes. | Each party has the right to arbitrate, or to go to small-claims court if the small-claims court has the power to hear the Dispute. Arbitration will solve all Disputes that the small-claims court does not have the power to hear. If there is an appeal from small-claims court, or if a Dispute changes so that the small-claims court loses the power to hear it, then the Dispute will only be heard by an Arbiter. |
| Do other options exist? | Yes. | Both parties may use lawful self-help remedies. This includes set- off or repossession and sale of any collateral. Both parties may seek remedies which don't claim money damages. This includes pre-judgment seizure, injunctions, or equitable relief. |
| Will this Clause continue to govern? | Yes, unless otherwise agreed. | The Clause stays effective, unless the parties sign an agreement stating it doesn't or you opt-out as permitted below. The Clause governs if you rescind the transaction. It governs if you default, renew, prepay, or pay. It governs if your contract is discharged through bankruptcy. The Clause remains effective, despite a transaction's termination, amendment, expiration, or performance. |

## Process

| How does arbitration start? | Mailing a notice. | Either party may mail the other a request to arbitrate, even if a lawsuit has been filed. The notice should describe the Dispute and relief sought. The receiving party must mail a response within 20 days. If you mail the demand, you may choose the arbitration group. Or, your demand may state that you want the parties to choose a local Arbiter. If related third parties or we mail the demand, you must respond in 20 days. Your response must choose an arbitration group or propose a local Arbiter. If it doesn't, we may choose the group. |
|---|---|---|

| Who arbitrates? | AAA, JAMS, or an agreed Arbiter. | You may select the American Arbitration Association ("**AAA**") (1-800-778-7879) http://www.adr.org or JAMS (1-800-352-5267) http://www.jamsadr.com. The parties may also agree in writing to a local attorney, retired judge, or Arbiter in good standing with an arbitration group. The Arbiter must arbitrate under AAA or JAMS consumer rules. You may get a copy of these rules from such group. Any rules that conflict with any of our agreements with you, don't apply. If these options aren't available, and the parties can't agree on another, a court may choose the Arbiter. Such Arbiter must enforce your agreements with us, as they are written. |
|---|---|---|
| Will the hearing be held nearby? | Yes. | The Arbiter will order the hearing within 30 miles of your home or where the transaction occurred. |
| What about appeals? | Appeals are limited. | The Arbiter's decision will be final. A party may file the Arbiter's award with the proper court. Arbitration will solve appeals of a small-claims court judgment. A party may appeal under the FAA. If the amount in controversy exceeds $10,000.00, a party may appeal the Arbiter's finding. Such appeal will be to a three-Arbiter panel from the same arbitration group. The appeal will be de novo, and solved by majority vote. The appealing party bears appeal costs, despite the outcome. |
| Can you discuss the proceedings? | Arbitration is subject to confidentiality. | If either party requests confidentiality, all aspects of the arbitration proceedings and any arbitration award or decision will remain strictly confidential, except only for the purpose of appealing or obtaining confirmation of the final arbitration award in the appropriate court of law. In addition, if either party requests confidentiality, all non-public documents, testimony, and information produced, received, heard, or used in the arbitration will be used only for purposes of the arbitration and will not be disclosed to any person. Confidential information may, however, be disclosed to the parties to the arbitration, their respective attorneys and their staff, the arbitrator and personnel of the American Arbitration Association, court reporters, and any person retained as an expert witness in the arbitration if the expert witness agrees to maintain all documents, information, and testimony in strict confidence. Nothing in this provision prohibits the confidential information from being disclosed to those who received or participated in the creation of the confidential information at the time it was created. Nothing in this paragraph will prevent either of us from disclosing information regarding the arbitration if necessary to enforce an arbitration award, the parties further agree to cooperate in obtaining the arbitrator's agreement to preserve the confidentiality of the arbitration and information. |

## Arbitration Fees and Awards

| Will we advance Arbitration Fees? | Yes, but you pay your costs. | We will advance your "Arbitration Fees" if you ask us to. This includes filing, administrative, hearing, and Arbiter's fees. You pay your attorney fees and other expenses. |
|---|---|---|
| Are damages and attorney fees possible? | Yes. | The Arbiter may award the same damages as a court. Arbiters may award reasonable attorney fees, and expenses, if allowed by law. |

| Will you pay Arbitration Fees if you win? | No. | If the Arbiter awards you funds, you don't reimburse us the Arbitration Fees. |
|---|---|---|
| Will you ever pay Arbitration Fees? | Yes. | If the Arbiter doesn't award you funds, then you must repay the Arbitration Fees. If you must pay Arbitration Fees, the amount won't exceed state court costs. |
| What happens if you win? | You could get more than the Arbiter awarded. | If an Arbiter's award to you exceeds our last Settlement Offer, we will pay 3 amounts. We will pay the award, plus 10% of such amount ("bonus payment"). We will pay your attorney the attorney fees conferred, plus 10% of such amount ("attorney premium"). If the Arbiter orders, we will pay reasonable expert witness costs and other costs you incurred ("cost premium"). If we never made a Settlement Offer, we will pay the bonus payment, attorney premium, and any cost premium. If a law allows you more, this Clause won't prevent such award. We won't seek attorney fees and expenses. |
| Can an award be explained? | Yes. | A party may request details from the Arbiter, within 14 days of the ruling. Upon such request, the Arbiter will explain the rule in writing. |

## Other Options

| If you don't want to arbitrate, can you still get a transaction? | Yes. You can get our services and decide not to arbitrate. | Consider these choices:<br><br>1. **Informal Dispute Resolution.** Contact us and attempt to settle any Disputes.<br>2. **Small-claims Court.** Seek to solve Disputes in small-claims court, within state law limits.<br>3. **Opt-Out of Arbitration.** Sign and then timely opt-out. |
|---|---|---|
| Can you opt-out of the Clause? | Yes. Within 60 days. | Write to us within 60 calendar days of signing your agreement to opt-out of the Clause for that agreement. List your name, address, account number and date. List that you "opt out". If you opt out, it will only apply to that agreement. |